# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                      Case No.   17-10004-DHW
                                                           Chapter 7

INA C. CARROLL,

     Debtor.


_____


TERESA R. JACOBS,
U.S. BANKRUPTCY ADMINISTRATOR,

     Plaintiff,

v.                                                         Adv. Proc. 17-01063

INA C. CARROLL,

     Defendant.

## MEMORANDUM OPINION

In this adversary proceeding, the bankruptcy administrator objects to the debtor's discharge pursuant to 11 U.S.C. § 727(a)(4) contending that the debtor knowingly and fraudulently made false oaths and accounts in connection with her underlying bankruptcy case.  Trial was held in Dothan, Alabama on August 9, 2017.  Appearing at the trial were Ms. Jacobs, the bankruptcy administrator, Samantha Valenzuela, the defendant's attorney, and Ina C. Carroll, the defendant.  For the following reasons, judgment will be for the defendant finding that her discharge should not be denied.

### Jurisdiction

The court's jurisdiction in this matter is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court referred its title 11 jurisdiction to the Bankruptcy Court.  *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985).  Further, because the issue here involves the determination of a core proceeding under 28 U.S.C. § 157(b), this court's jurisdiction extends to the entry of a final order or judgment.

## Findings of Fact

After first consulting with her attorney, Ina C. Carroll filed a chapter 7 petition for relief in this court on January 3, 2017. Prior to the filing, two matters of particular import in this proceeding occurred.

First, Ms. Carroll's lawsuit against Southeast Alabama Medical Center, which was filed in 2013, was settled in November 2016. Ms. Carroll received $7,500 proceeds from that action, but by the time she filed for bankruptcy relief, she had disbursed that entire sum. From the lawsuit proceeds, she made four noteworthy transfers. Ms. Carroll paid $1,500 to her daughter, Tiffany Lewis, and $500 to her father, Gene Holston. She gave $1,000 to her grandson, Devontae Holston, and she gave her church $750, representing a 10% tithe on the total settlement amount.

Secondly, Ms. Carroll operated a business, "Carroll's Fashion," between January 2016 and October 2016. In that business, Ms. Carroll sold new and used clothing. The business had no fixed location; instead, Ms. Carroll peddled her goods from place to place at various locations. During its roughly 10 months of operation, the business had gross sales of only about $1,300. As of the date of the Ms. Carroll's bankruptcy, the business was no longer operating.

Ms. Carroll's bankruptcy case was randomly selected by the Administrative Office of the United States Courts for a detailed audit. On March 28, 2017, the auditor filed a report (Doc. # 13) finding that the debtor had made a material misstatement regarding her current monthly income understating the amount by $1,171 per month.

In conjunction with filing the bankruptcy petition, Ms. Carroll filed various lists, statements, and schedules that were signed under oath and subject to penalty of perjury. One of those was Official Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy. At Part 2, paragraph 5 of Official Form 107, the debtor is asked to respond to the following question: "Did you receive any other income during this year or the two previous calendar years? Include income regardless of whether that income is taxable. Examples of other income are alimony; child support; Social Security; unemployment, and other public benefit payments; rental income; interest; dividends; *money collected from lawsuits*; royalties; and gambling and lottery winnings." (Emphasis added). In response to this question, Ms. Carroll did not list the lawsuit proceeds received in November 2016 or income received in calendar year 2016 from the operation of her business.

At Part 3, Paragraph 8 of the form, the debtor is asked: "Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefitted an insider?" Ms. Carroll's response that this question was "no."

At Part 4, Paragraph 9 of Official Form 107, the debtor is asked: "Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action or administrative proceeding?" Ms. Carroll's response to that question was "no."

At Part 5, Paragraph 13 of Official Form 107 the debtor is called upon to respond to a question about gifts made. In particular, the question asks: "Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?" Ms. Carroll's response to that question was "no."

Further, at Paragraph 14 of the same form the debtor is asked: "Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?" Again, Ms. Carroll's response was "no."

At Part 11, Paragraph 27, the debtor is asked: "Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business? Again, Ms. Carroll's response was "no."

At the February 2, 2017, meeting of creditors, the trustee asked Ms. Carroll about whether she had been involved in any lawsuits. In response to the trustee's question, Ms. Carroll informed the trustee of her lawsuit against Southeast Alabama Medical Center and of the result of that action.

On May 15, 2017, Ms. Carroll filed an amended Official Form 107–Statement of Financial Affairs for Individuals Filing for Bankruptcy (Doc. #27). Therein, she disclosed paying her daughter, Tiffany Lewis, $1,500 and her father, Gene Holston, $500 from the lawsuit proceeds on account of antecedent debts. Additionally, she disclosed making gifts from the lawsuit proceeds to her grandson, Devante Holston of $1,000 and to her church of $720. Further, in the amended statement, Ms. Carroll disclosed the lawsuit against Southeast Alabama Medical Center. Finally, the amendment disclosed that debtor's sole proprietorship interest in Carroll's Fashions.

Conclusions of Law

It is axiomatic that the bankruptcy system cannot function without the debtors filing honest and complete schedules, statements, and lists with their bankruptcy petitions. Bankruptcy trustees, who incidentally are paid a meager $60 for administering a 'no-asset' bankruptcy case, cannot be expected to undertake, absent some red flag of caution, detailed investigations as to every debtor's pre-bankruptcy financial affairs. Such an expectation is utterly unrealistic. Instead, the trustee must be able to rely upon the honesty and completeness of a debtor's responses to questions elicited in the schedules, statements, and lists.

Ms. Carroll does not deny the inaccuracy of her initial schedules, statements, and

lists. She did not properly disclose the fact that she operated a business within the year prior to filing bankruptcy. She did not initially disclose that she had been involved in a lawsuit within that same year. She did not disclose making preferential payments or potential fraudulent transfers of property to insiders within the year. She did not disclose making a charitable donation of over $600 within the year prior to bankruptcy. Her responses to each of those inquiries should have been yes instead of no.

An untruth is an untruth whether it is a 'whopper' or a mere 'white lie.' Nevertheless, Ms. Carroll's untruths are of the 'white lie' variety in that they resulted in little, if any, harm to her bankruptcy estate. For example, her failure to disclose her clothing business did not affect the bankruptcy estate. The business had been nonoperational for three months prior to bankruptcy and as far as the court is aware, had no remaining assets as of the time of bankruptcy. Likewise, Ms. Carroll's failure to disclose her lawsuit settlement had no effect upon the estate. The rather meager settlement proceeds were completely disbursed before bankruptcy. Similarly, Ms. Carroll's failure to disclose preferential payment to an insider did not appreciably affect the bankruptcy estate's administration. She paid two antecedent debts from her lawsuit proceeds: $1,500 to her daughter and $500 to her father. Pursuant to 11 U.S.C. § 547(c)(8), the payment of the debt to Ms. Carroll's father would not be avoidable by the trustee because it is less than the $600 statutory minimum. Finally, the trustee could not have avoided the $750 transfer to the Ms. Carroll's church. *See* 11 U.S.C. § 548(a)(2) (excepting charitable contributions of less than 15% of the debtor's gross annual income from the trustee's avoidance powers). Hence, the only realistic recovery that the trustee could have potentially made for the estate's benefit would have been the gift to the preferential payment to the daughter and the gift to the grandson. Not surprisingly, the trustee, as of this writing, has not withdrawn his report of 'no assets' nor filed an action to avoid these transfers. More than likely, the small amounts involved and the collectability of any judgment have influenced the trustee's decision not to pursue these claims. As noted, the fact that Ms. Carroll made false statements is undeniable. Further, it is likely that she did so knowingly or at the very least carelessly. The court recognizes that "false oaths regarding worthless assets may bar the discharge of debt." *See In re Protos*, 322 Fed. Appx. 930, 934 (11th Cir. 2009)(citing *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984). However, that there was little if any adverse effect on the trustee's administration of the bankruptcy estate in this case negates imputation of a fraudulent intent.

Further, Ms. Carroll, when asked by the trustee about lawsuits at her creditors' meeting, freely testified concerning that matter. That, too, shows a lack of fraudulent intent regarding the omission of that matter in the schedules, statements, and lists. Finally, Ms. Carroll contended that her amendment of the schedules, statement, and lists showed a lack of fraudulent intent. This is least persuasive in that the amendments occurred only after the administrator filed this adversary proceeding.

The Code provides that the court grant the debtor a discharge unless "the debtor

knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account. ...". 11 U.S.C. § 727(a)(4). "Deliberate omissions by the debtor may also result in the denial of a discharge." *In re Chalik*, 748 F.2d at 618. "To justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material." *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991). Nevertheless, "courts generally construe the statutory exceptions to discharge in bankruptcy liberally in favor of the debtor,' and recognize that [t]he reasons for denying a discharge ... must be real and substantial, not merely technical and conjectural." *In re Miller*, 39 F.3d 301, 304 (11th Cir. 1994)(citations omitted). "[A] false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent." 6 *Collier on Bankruptcy* ¶ 727.04[1][a] (15th ed. rev'd 2006).

The undersigned, after hearing the debtor's testimony and considering all of the other evidence, is not persuaded by a preponderance of the total body of evidence that the debtor's misstatements in her statements, schedules, and lists was done with fraudulent intent.

## Conclusion

For the foregoing reasons, the court finds that judgment should be for the defendant and against the plaintiff holding that the defendant's discharge will not be denied under 11 U.S.C. § 727(a)(4). A separate judgment will enter accordingly.

Done this the 15th day of August, 2017.

Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Teresa R. Jacobs, United States Bankruptcy Administrator/Plaintiff
   Samantha Valenzuela, Defendant's Attorney